IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KRISH HOSPITALITY LLC,  KRISH INVESTMENTS INC., | § § § | |
| *Plaintiffs,* | § § | SA-23-CV-00450-FB |
| vs. | § § | |
| AMGUARD INSURANCE COMPANY, | § § § | |
| *Defendant.* | § | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant's Motion for Summary Judgment [#22].  All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C.  The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, it is recommended that Defendant's motion be granted.

## I.  Background

This case arises out of a wind and hailstorm in April 2022.  Plaintiffs Krish Hospitality LLC and Krish Investments, Inc., own a Best Western Hotel in the San Antonio area, which is insured under a businessowner's insurance policy issued by Defendant AmGUARD Insurance Co.  Plaintiffs' Original Petition alleges Defendant wrongfully undervalued and denied their claim to recover damages under the policy and asserts causes of action of breach of contract, violations of the Texas Insurance Code (including the Prompt Payment Act), and breach of the duty of good faith and fair dealing.

1

Defendant has filed a motion for summary judgment, arguing Plaintiffs cannot prevail on any of their claims because there is no evidence that the damages, if any, that occurred during the Policy's coverage period exceeded the Policy's deductible. Accordingly, Defendant argues Plaintiffs are not entitled to any benefits under the Policy, and it should be awarded summary judgment. Plaintiffs filed a response in opposition to the motion [#23], to which Defendant filed a reply [#22]. The motion is ripe for the Court's review.

## II.  Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion" and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and

other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

### III.  Summary Judgment Record

The undisputed summary judgment evidence establishes that Defendant issued Businessowner's Policy Number KRBP344975 to Plaintiffs on March 15, 2022 ("the Policy"). (Fontanella Decl. [#22-1], at ¶ 4; Policy [#22-1], at 3–36.) The Policy was in effect from March 11, 2022, through March 11, 2023, and provided coverage to Plaintiffs' hotel located at 18555 U.S. Highway 281 N, San Antonio, Texas, 78258-7600 ("the Property"). (Fontanella Decl. [#22-1], at ¶ 4.) On June 2, 2022, Plaintiffs submitted notice of a claim for property damage allegedly cause by a wind and hailstorm on April 12, 2022. (*Id.* at ¶ 5.) Defendant assigned the claim to adjuster Colin McGonagle, who inspected the Property on June 23, 2022. (*Id.* at ¶¶ 6–7.)

On June 24, 2022, McGonagle provided Defendant with an estimate of total damages observed during the inspection, as well as a status report on the claim and supporting materials (including a Benchmark Hail History Report of weather history near the location since January 2009 and a Seek Now Maestro Report with numerous photographs of the Property). (*Id.* at ¶ 8; McGonagle Estimate [#22-1], at 37–49.) The Benchmark Hail History Report (dated June 24, 2022) indicates that it was "possible" that there was a significant hail event at the address of the Property on the alleged date of loss of April 12, 2022. (Benchmark Report [#22-1], at 50–51.) However, the report also states that there were multiple "significant hail events" (defined as .075" diameter or greater) near the Property between 2013 and 2021, including three in 2016 (4/25, 4/29,

and 5/31), one in 2020 (5/27), and four in 2021 (4/28, 5/28, 6/5, and 9/28). (*Id.*) All of these hail events occurred before the Policy's coverage period began on March 11, 2022. (Policy [#22-1], at 3.) The Seek Now Maestro Report states that Jose Garcia met McGonagle at the Property on June 23, 2022, to assist with the inspection and perform the "Ladder Assist" service. (Seek Now Report [#22-1], at 56.) The report notes granule loss and blistering of the roof and the poor condition of previous roof repairs performed unsatisfactorily, as well as hail damage to box vents on the roof. (*Id.* at 54–88.)

Based on the weather report and roof inspection, McGonagle ultimately concluded that the inspection "showed no wind or hail damage to the shingles" of the roof of the Property. (McGonagle Estimate [#22-1], at 47.) However, McGonagle noted hail damage to two box vents and one downspout, as well as hail damage to the window beading of 11 windows. (*Id.* at 47–48.) McGonagle estimated the total damage from any storm occurring in April 2022 to be approximately $4,969.00. (*Id.* at 46.) After reviewing the reports, Defendant determined the damages allegedly arising from the April 12, 2022 storm were less than the Policy wind/hail deductible of $52,929.27 and determined no payment was owed on the claim. (Fontanella Decl. [#22-1], at ¶ 9; McGonagle Estimate [#22-1], at 47; Claim Ltr. [#22-1], at 89–90.)

Plaintiffs filed suit on April 13, 2023. After filing suit, Plaintiffs hired David Day, a licensed professional engineer, to inspect the roof of their Property and to determine if it contained hail damage related to a storm within the applicable policy period. (Day Aff. [#23-3], at 2–4.) Mr. Day inspected the roof on May 11, 2023, but did not produce a report at that time. (*Id.* at ¶ 4.) Plaintiffs designated Mr. Day as a non-retained expert on September 11, 2023, as their only expert to provide testimony on causation and the extent of loss to Plaintiffs' roof. (Expert Designation [#17], at 3.) Because Mr. Day was designated as a non-retained expert, Plaintiffs never produced

the expert disclosures that would have been required if he had been properly designated as a retained expert. Defendant became aware of the substance of Mr. Day's opinion for the first time when Plaintiffs filed an affidavit by Mr. Day with their summary judgment response. The affidavit states that it is Mr. Day's "expert opinion that the storm of April 2022 caused the damage to the building, and that damage alone is enough to necessitate, on a conservative side, a full roof replacement." (Day Aff. [#23-3], at ¶ 12.)

After Defendant filed its motion for summary judgment, Defendant moved to strike Mr. Day's affidavit for failure to properly designate Mr. Day as a retained expert and failure to provide an expert report as required by the Federal Rules of Civil Procedure. Plaintiffs conceded that they mis-designated Mr. Day in their response to Defendants' motion and asked for an extension of time to amend their expert disclosures, file an expert report, and conduct expert discovery. The Court granted Defendant's motion to strike on May 30, 2024, finding Plaintiffs had failed to account for their extraordinary delay in seeking any relief from the Court related to the mis-designation of their expert. (Order [#31].) The Court therefore prohibited Mr. Day from testifying as an expert in this case and precluded Plaintiffs from relying on Mr. Day's affidavit and expert opinions as to causation and the scope of damages in defending against Defendant's motion for summary judgment. Thus, the undersigned has disregarded Mr. Day's affidavit in evaluating the motion for summary judgment.

The record also contains an affidavit by Brett Dyer, a licensed roofer, who Plaintiff hired to physically inspect the Property. (Dyer [#23-4], at ¶ 2.) Mr. Dyer's affidavit does not indicate the date on which he inspected the roof,[1] but states that he "was asked by the owner to prepare an

---

[1] Mr. Dyer's report states that the report was "entered" on September 1, 2022, but also does not provide a date of inspection. (Dyer Estimate [#23-4], at 4.)

5

estimate for what it would cost to replace the damaged roof." (*Id.* at ¶ 4.)  Mr. Dyer's affidavit states that his inspection showed that the roof, gutters, and windows had suffered from wind and severe hail damage and that the size of the hail hits observed were approximately 1 to 1.5 inches and could be easily seen on the roof, gutters, and windows.  (*Id.* at ¶ 3.)  Mr. Dyer further stated that the hail hits "appeared to have occurred within approximately the previous 12 months."  (*Id.*)  The estimate attached to his affidavit allots various costs for the roof replacement, gutter replacement, and window replacement of Plaintiffs' Property and also includes photographs. (Dyer Estimate [#23-4], at 4–37.)  The estimate does not include any further information regarding the date of damage and does not contain any opinion as to why the roof, gutters, or windows need to be replaced.  (*Id.*)  Mr. Dyer estimates a total roof replacement would cost $155,859.96, gutter replacements would cost $23,489.92, and window replacements would cost $292,548.37 for a total cost of $612,940.02 to make these repairs.  (*Id.* at 5–6.)  In Plaintiffs' initial disclosures, they state they are seeking actual damages flowing from the April 2022 storm in this amount.  (Initial Disclosures [#22-3], at 3.)

Defendant retained Sampson Quang Nguyen, a licensed professional engineer, to inspect the Property to evaluate the extent of hail and wind damage, if any, to the roof and exterior caused by the reported April 12, 2022 storm.  (Nguyen Decl. [#22-2], at ¶¶ 2–3.)  Mr. Nguyen had previously inspected the Property for wind and hail damage in 2020 and again inspected the Property on September 26, 2023.  (*Id.* at ¶ 5.)  During the 2020 inspection (prior to the Policy period), Nguyen observed dents to aluminum attic vents and "old hail damage" to window beading. (2020 Report [#22-5], at 11–12.)  Based on his September 2023 inspection and a review of various weather reports for the area surrounding the Property, Mr. Nguyen concluded that the Property had been subject to multiple hailstorms since its construction in 2001; the roof shingles exhibited

widespread granule loss from long-term deterioration, as well as blistering and other surface anomalies from roof traffic and age; there were no signs of impact damage to the roof shingles though some denting of already-dented aluminum surfaces from recent hailstone impact (possibly on April 12, 2022, or April 28, 2023); and the Property's windows did not require replacement. (*Id.* at ¶ 6; Nguyen Report [#22-2], at 4–89.)

## IV. Analysis

Defendant seeks summary judgment on all of Plaintiffs' claims. Defendant argues it is entitled to summary judgment on Plaintiffs' breach of contract claim because Plaintiffs cannot prove that they are entitled to benefits under the Policy. The undersigned agrees. Because Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim, Plaintiffs' extracontractual claims, which are based on an entitlement-to-benefits theory and not an independent injury, also fail as a matter of law.

**A.     Defendant is entitled to summary judgment on Plaintiff's claim of breach of contract.**

In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 499–500 (5th Cir. 2018). For Plaintiffs to prevail on this claim, they must prove that their insurance claim is covered by the policy at issue. *See Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018). That requires proof that "the injury or damage was incurred at a time covered by the policy." *See Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 400 (Tex. 2016). Because Plaintiffs have not presented any evidence from which a reasonable jury could conclude that damage

exceeding the policy deductible occurred during the policy period, Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim.

The only evidence Plaintiffs offer to establish that their Property sustained hail and wind damage during the Policy period is the affidavit and estimate of Mr. Dyer, the roofer they hired to inspect the Property and provide an estimate of the cost of roof replacement.  (The only other piece of evidence offered by Plaintiffs on this issue is Mr. Day's affidavit, but the Court struck the affidavit and prohibited Plaintiffs from relying on the affidavit to defend against Defendant's motion for summary judgment.)  Again, Mr. Dyer's affidavit and estimate focus on the cost of a roof replacement, not the source of any alleged damage to the roof.  Mr. Dyer does state in his affidavit that his inspection showed damage to the roof and visible hail hits to the roof, gutters, and windows and that believes the hail occurred within "approximately the previous 12 months." (Dyer Aff. [#23-4], at ¶ 3.)  The date of Mr. Dyer's inspection is unclear, but it was likely close to the date the estimate was entered on September 1, 2022, meaning Mr. Dyer opined that the roof damage occurred sometime between approximately September 2021 and September 2022.  Six months of this estimated period pre-dates the Policy period of March 11, 2022, through March 11, 2023.  On this record, no reasonable factfinder could conclude based solely on Mr. Dyer's vague opinion (without any reference to supporting facts giving rise to that opinion such as weather reports or other causation analysis) that Plaintiffs' Property suffered hail damage to the roof within the Policy period.

The weather reports and other opinions in the summary judgment record provide similarly inconclusive evidence regarding which storm(s) caused the damage to Plaintiffs' Property and when.  The Benchmark Hail History Report found that it was "possible" there was a significant hail event on the alleged date of loss of April 12, 2022, but also that there were multiple additional

"significant hail events" in 2020 and 2021, which pre-dated the Policy period. (Benchmark Report [#22-1], at 50–51.) Defendant's expert engineer, Mr. Nguyen, concluded that the Property has been subject to multiple hailstorms since its construction in 2001 after reviewing several weather reports for the area surrounding the Property. (Nguyen Report [#22-2], at 4–89.) And the 2020 report completed by Mr. Nguyen found some damage—to roof vents and window beading—pre-dating the coverage period. (2020 Report [#22-5], at 10–11.)

To generate a fact issue for trial, Plaintiffs must provide reliable evidence from which a jury could determine that a storm occurring during the Policy period caused the alleged damage. *See Lowen Valley View*, 892 F.3d at 170–71 (affirming summary judgment for insurer where plaintiffs failed to provide any evidence that could afford the jury "a reasonable basis on which to allocate the damage"). Even assuming there was hail damage to the roof, Plaintiffs have not satisfied this burden. Their only expert is a roofer who was hired to provide an estimate for the cost of roof replacement and who opined that the damage occurred approximately within a one-year period that overlapped only partially with the Policy's coverage period. In other words, his testimony indicates that hail damages may have occurred during or outside of the policy period. This evidence is insufficient to create a genuine fact issue on the issue of whether covered damages occurred during the Policy period, as no reasonable jury could return a verdict in favor of Plaintiffs based on Mr. Dyer's affidavit.

Moreover, even if the summary judgment evidence were sufficient to suggest that an April 2022 storm caused some damage, Plaintiffs still have not provided sufficient evidence from which a jury could allocate damages between covered and non-covered losses. "[W]hen covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage." *Id.* at 170 (quoting *Lyons v. Millers Cas.*

*Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993)). Plaintiffs have presented evidence that the property was damaged by hail—but not any way to determine which damage was caused by hail events during versus outside the policy period. Additionally, the Policy excludes coverage for loss or damage caused by or resulting from "wear and tear." (Policy [#22-1], at 32.) The Seek Now Maestro Report found extensive roof wear and tear such as granule loss and blistering not attributable to hail damage. (Seek Now Report [#22-1], at 54–88.) This is consistent with the findings of Mr. Nguyen, who also determined that the roof shingles exhibited widespread granule loss from long-term deterioration, as well as blistering and other surface anomalies from roof traffic and age. (Nguyen Decl. [#22-2], at ¶ 6.) Dyer's affidavit, on the other hand, states that he observed wind and severe hail damage to the roof of the Property. (Dyer Aff. [#23-4], at ¶ 3.) Plaintiffs have made no effort to allocate between covered and uncovered damage from which a jury could determine whether roof damage covered under the Policy (as opposed to non-covered wear and tear) exceeded the Policy deductible. *See 343 W. Sunset, LLC v. Seneca Ins. Co., Inc.*, No. 5-19-CV-01375-FB-RBF, 2021 WL 5227086, at *4 (W.D. Tex. July 27, 2021), *report and recommendation adopted*, No. SA-19-CV-1375-FB, 2021 WL 5195799 (W.D. Tex. Aug. 11, 2021) (granting summary judgment to insurer for failure of plaintiffs to provide evidence to allocate between covered and non-covered damages); *Guzman v. State Farm Lloyds*, 456 F. Supp. 3d 846, 857 (S.D. Tex. 2020) (same).

Finally, Plaintiffs have not provided evidence from which a jury could reasonably conclude that they are entitled to a completely new roof, as well as new gutters and 114 new windows. The fact that Mr. Dyer itemized the estimated cost of replacing these various items is not evidence that replacement is required to address a covered loss.

In summary, the evidence Plaintiffs offered to defeat Defendants' motion for summary judgment does not provide a sufficient basis for a jury to conclude that damage occurred during the Policy period exceeding the $52,929.27 wind/hail deductible. This is fatal to Plaintiffs' breach of contract claim.

**B.     Defendant is entitled to summary judgment on Plaintiffs' extracontractual claims.**

Defendant also seeks summary judgment on Plaintiffs' extracontractual claims. Plaintiffs allege that Defendants violated the Texas Insurance Code by engaging in unfair settlement practices, misrepresenting material facts related to coverage at issue, failing to promptly pay Plaintiffs' claim, and failing to pay for the claim when coverage was reasonably clear. (Orig. Pet. [#1-1], at 17–22.)  "An insured cannot recover *any* damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits."  *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018) (emphasis in original); *see also Dillon Gage, Inc. of Dallas v. Certain Underwriters at Lloyds Subscribing to Policy No. EE1701590*, 26 F.4th 323, 325 (5th Cir. 2022) (applying *Menchaca* and affirming dismissal of extracontractual claims when no right to benefits under the policy existed). All of Plaintiffs' extracontractual claims are predicated on the loss being covered under the Policy. Plaintiffs are not proceeding under an independent-injury rule. Nor did they assert one in their response to Defendant's motion for summary judgment. Therefore, Defendant is also entitled to summary judgment on Plaintiffs' extracontractual claims.

### IV.  Conclusion and Recommendation

Having considered Defendant's motion, the response and reply thereto, the summary judgment evidence, and governing law, the undersigned recommends that Defendant's Motion for Summary Judgment [#22] be **granted**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 18th day of June, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE